United States District Court
Southern District of Texas
**ENTERED**
March 02, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOMAS RAUL GALLO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-13-1897 |
| ERIC GUERRERO, Director, | § | |
| Texas Department of Criminal | § | |
| Justice – Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

The petitioner, Tomas R. Gallo, initiated this federal habeas corpus action in 2013. At that time, Gallo was incarcerated under a death sentence. During the long course of these proceedings, the Texas Court of Criminal Appeals reformed his sentence to one of life imprisonment. Gallo's federal litigation now only proceeds on claims relating to his capital-murder conviction.

After extensive litigation, Gallo ultimately filed a Third Amended Petition for Writ of Habeas Corpus in 2025. (Docket Entry No. 97). This case is before the court on Director Eric Guerrero of the Texas Department of Criminal Justice—Correctional Institutions Division's Answer with Brief in Support. (Docket Entry No. 105). After considering the pleadings, the record, and the applicable law, the court will deny Gallo's petition and dismiss this action for the reasons explained herein.

## I.   <u>**Factual and Procedural Background**</u>

On December 11, 2001, Destiny Flores ("the victim") turned three years old.  That morning her mother, Cristina Arredondo, left the victim in her boyfriend Gallo's care while she worked.  Hours later, Gallo called Arredondo and reported that the victim was not breathing.  Instead of calling 9-1-1 immediately, Arredondo returned home.  Arredondo found the victim in the bathroom, looking pale, bruised, and lifeless.  Gallo was performing CPR on the victim.  Arredondo asked what happened, but Gallo did not respond.  Arredondo called 9-1-1.

When first responders arrived, Gallo was outside.  Gallo directed them to the residence and then left. Gallo went to a friend's house, smoked marijuana, ate pizza, and slept.

First responders found the victim unresponsive in the bathroom.  Bruises and bite marks covered her body.  Her body bore signs of  violent sexual abuse.  After being rushed to the hospital, the victim died later that afternoon.  A subsequent autopsy revealed that the victim had suffered at least 180 external, and more than thirty internal, injuries.

The police investigation quickly turned its attention toward Gallo.  After his arrest on December 12, 2001, Gallo provided a written statement.  Gallo claimed that he had been asleep, awoke to find the victim not breathing, and then tried to perform CPR.  Gallo told officers:  "I did not sexually assault [the victim] but

I did cause several bruises on her face and several bite marks on [her] back, side, stomach and buttocks area . . . ."[1]

The State of Texas charged Gallo with the capital murder of a child under the age of six.[2]  In 2004, Gallo stood trial in the 182nd Judicial District Court of Harris County, Texas with the Honorable Jeannine Barr presiding.[3]  The prosecution's case emphasized that Gallo had been the only adult home with the victim, that he had acted suspiciously, and that he had confessed to hurting her.  The prosecution also presented testimony that Gallo had made incriminating statements to others.  Additionally, the State relied on forensic evidence which told the story of a violent sexual assault accompanied by brutal physical injuries, ending when Gallo struck the victim's head against a bathtub.

The State cemented its case with testimony from jail inmate Thomas Michael Gilstrap who said that Gallo had described how he had injured and killed the victim.  The Texas Court of Criminal Appeals described Gilstrap's testimony as follows:

> [Gilstrap] testified that [Gallo] talked to him about the instant offense when they were housed in the Harris

---

[1]Reporter's Record, Docket Entry No. 109-55, p. 48; Docket Entry No. 109-68, p. 19.  For purposes of identification all page numbers reference the pagination of each docket entry in the court's electronic case filing ("ECF") system.

[2]Clerk's Record, Docket Entry No. 109-160, p. 13.

[3]The State originally tried Gallo in 2002, but the trial court granted a mistrial because of juror illness.  Attorneys Robert Morrow and Gerald Bourque represented Gallo at trial.  The court will refer to his attorneys collectively as "trial counsel."

County Jail in January 2003. He testified that [Gallo] stated, "I'm the one that killed that little girl." [Gallo] told Gilstrap that he was watching his girlfriend's daughter while she was at work, that the child was "bothering" him and "making a lot of noise," that he "spanked her four or five times," that she "quit breathing" after he "slammed her into the bathtub," and that he "got real scared," "tried to clean her up," and "called her mother at work." He also told Gilstrap that "he failed the IQ test" and "he'd probably beat the case because he was retarded."[4]

The jury found Gallo guilty of capital murder. A subsequent punishment hearing resulted in a death sentence.

Through appointed counsel, Gallo unsuccessfully filed a direct appeal in the Texas Court of Criminal Appeals.[5] The United States Supreme Court denied Gallo's petition for writ of certiorari on June 2, 2008.[6]

During the pendency of his direct appeal, Gallo filed an initial state habeas application raising thirty-eight claims. The lower habeas court issued written findings of fact and conclusions of law recommending the denial of relief.[7] On January 9, 2013, the Court of Criminal Appeals denied relief based on those findings and its own independent review.[8]

---

[4]Gallo v. State, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007).

[5]See Gallo v. State, 239 S.W.3d 757 (Tex. Crim. App. 2007), reh'g denied (Nov. 21, 2007).

[6]See Gallo v. Texas, 128 S. Ct. 2872 (2008).

[7]See Findings of Fact and Conclusions of Law, Docket Entry No. 109-172, pp. 285-337.

[8]Ex parte Gallo, No. WR-77,940-01, 2013 WL 105277 (Tex. Crim. App. Jan. 9, 2013).

Gallo initiated federal proceedings[9] but then began litigating again in state court.[10]  The court stayed this action to allow state proceedings to go forward.[11]  On November 7, 2016, Gallo filed a third state habeas application ("third habeas application") in the Texas Court of Criminal Appeals raising eight claims.[12]  The Court of Criminal Appeals remanded the case for the consideration of two issues: (1) a claim that Gallo was a person with intellectual disability who was exempt from exaction under Atkins v. Virginia, 122 S. Ct. 2242 (2002) and (2) a claim that the State presented

---

[9]Gallo initiated this action by filing a motion for the appointment of federal counsel.  See Letter, Docket Entry No. 1; Order Granting Motion for the Appointment of Counsel, Docket Entry No. 4.  Before reassignment to the undersigned, the Honorable United States District Judge Vanessa D. Gilmore presided over this action.

[10]See Application for Post-Conviction Writ of Habeas Corpus Pursuant to Tex. Crim. Proc. Code Ann. Art. 11.071, Docket Entry No. 109-178, pp. 5-34.  Gallo's initial state habeas attorney filed the successive application on Gallo's behalf.  Because initial habeas counsel's representation did not extend to successive proceedings, the Court of Criminal dismissed that pleading but granted Gallo's federally appointed attorney leave to file another habeas application.  See Ex Parte Gallo, 448 S.W.3d 1, 6 (Tex. Crim. App. 2014).

[11]See Order, Docket Entry No. 61.  Gallo had filed a skeletal federal habeas petition on January 8, 2014.  See Protective Skeletal Petition for Writ of Habeas Corpus, Docket Entry No. 24. Gallo filed an 490-page first amended federal petition on January 6, 2016.  See Amended Petition for Writ of Habeas Corpus, Docket Entry No. 51.  After being ordered to set out his claims succinctly, Gallo filed a 200-page Second Amended Petition for Writ of Habeas Corpus on May 4, 2016.  See Second Amended Petition for Writ of Habeas Corpus, Docket Entry No. 58.

[12]See Subsequent Application for Writ of Habeas Corpus (Article 11.071 of the Texas Code of Criminal Procedure), Docket Entry No. 109-194, pp. 4-251.

false testimony in the penalty phase.[13]  After factual development, the parties agreed that Gallo's <u>Atkins</u> claim entitled him to relief from his death sentence.[14]

After conducting its own review, the Court of Criminal Appeals granted relief on Gallo's <u>Atkins</u> claim on April 17, 2024.  The Court of Criminal Appeals reformed Gallo's death sentence to one of life imprisonment.[15]  With that ruling, the Court of Criminal Appeals rejected Gallo's penalty-phase false-evidence claim as moot and dismissed any remaining claims under Texas' abuse-of-the-writ doctrine.[16]

The parties returned to federal court.  Because Gallo is no longer on death row, he has withdrawn any previously-raised claims challenging his sentence.[17]  Gallo filed a ninety-eight-page Third Amended Petition for Writ of Habeas Corpus on January 28, 2025.[18]  Gallo's petition raises the following claims:

---

[13]<u>See Ex parte Gallo,</u> No. WR-77,940-03, 2024 WL 1644214, at *1 (Tex. Crim. App. 2024).

[14]<u>See</u> Agreed Proposed Findings of Fact, Conclusions of Law, Order, Docket Entry No. 109-200, pp. 3-29.

[15]<u>Ex parte Gallo,</u> 2024 WL 1644214, at *1 (Tex. Crim. App. Apr. 17, 2024).

[16]<u>Id.</u> at *2.

[17]<u>See</u> Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 13.

[18]<u>See</u> Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97.

1.    Gallo is actually innocent of capital murder.

2.    Two erroneous rulings from the trial court deprived Gallo of a fair trial.

3.    His trial attorneys provided constitutionally ineffective representation.

4.    Counsel on direct appeal provided constitutionally deficient representation.

5.    The cumulative effect of the alleged errors creates an independent constitutional violation.

6.    The State suppressed evidence and presented false testimony at trial.

Respondent submitted an answer arguing that most claims are procedurally barred and that all are meritless.[19]  Gallo has filed a reply.[20]  This matter is ripe for adjudication.

## II.  Availability of Federal Review

The procedural availability of federal habeas review is a primary concern in this case.  Respondent argues that Gallo has not presented claims one, three, four, and six in a manner which allows for federal review of their merits.[21]  The court must decide whether Gallo's claims are procedurally barred.

---

[19]Respondent Guerrero's Answer with Brief in Support, Docket Entry No. 105.

[20]See Petitioner's Reply to Respondent's Answer with Brief in Support, Docket Entry No. 108.

[21]Respondent also argues that claim five is procedurally barred because, even though Gallo had exhausted a similar claim in state court, his federal claim covers broader ground and aggregates error that was not alleged in state court.  In the interests of justice, however, the court will treat the claim as exhausted and address its merits.

The procedural barriers in this case arise from two sources. First, Gallo never litigated claims one, three, and four in state court. Under the Anti-Terrorism and Effective Death Penalty Act, a federal habeas petition "shall not be granted unless it appears that" the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A federal procedural bar results when a petitioner "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman v. Thompson, 111 S. Ct. 2546, 2557 n.1 (1991). Gallo has not argued that any state avenue for relief remains open to him. Because the Texas courts enforce a strict abuse-of-the-writ doctrine, Gallo cannot litigate his unexhausted claims in state court. As a result, "there is a procedural default." Id.

Second, the Court of Criminal Appeals dismissed claim six when Gallo raised it in a successive habeas application. Texas' reliance on its own procedural law bars federal review. See Dretke v. Haley, 124 S. Ct. 1847, 1852 (2004) ("[F]ederal courts will not disturb state court judgments based on adequate and independent state law procedural grounds."); see also Gutierrez v. Stephens, 590 F. App'x 371, 384 (5th Cir. 2014) (finding that Texas' abuse-of-the-writ dismissal is an independent and adequate state ground which bars federal review).

A petitioner has the burden to overcome a procedural bar. See McCleskey v. Zant, 111 S. Ct. 1454, 1470 (1991). A federal court may review an inmate's unexhausted or procedurally barred claims only if the inmate shows: (1) cause and actual prejudice; or (2) that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent . . . .'" Haley, 124 S. Ct. at 1852 (quoting Murray v. Carrier, 106 S. Ct. 2639, 2639 (1986)); see also Schlup v. Delo, 115 S. Ct. 851 (1995). Federal review may only proceed if Gallo can overcome the procedural bar.

Forgiving a procedural bar depends on the operation of equity. See Haley, 124 S. Ct. at 1852 ("[W]e have recognized an equitable exception to the bar when a habeas applicant can demonstrate cause and prejudice for the procedural default."). The court stayed this case so that Gallo could litigate in state court, but he still decided not to exhaust claims one, three, and four. Gallo knew about the defects in his unexhausted claims but he chose not to cure them in state court.[22] Gallo's choice to bypass the state courts weighs heavily against forgiving the procedural bar of his unexhausted claims.

For the reasons discussed below, the court cannot reach the merits of claims one, three, four, and six.

---

[22]See Protective Skeletal Petition for Writ of Habeas Corpus, Docket Entry No. 24, p. 44.

## A.    Claim One:    Actual Innocence

In claim one, Gallo says that he is actually innocent of capital murder.  Respondent argues that this claim is subject to dismissal because Gallo never exhausted it in state court. Respondent also contends that this claim is meritless.

Inmates raise actual-innocence claims in two separate contexts: (1) as a stand-alone claim and (2) as a gateway to the consideration of other claims.  Gallo does not advance claim one as an independent ground for federal habeas relief but only as the gateway to the consideration of other barred claims.  Gallo concedes that "a federal court may not grant relief . . . based purely upon a gateway claim" of innocence.[23]  The court, therefore, denies claim one because it does not provide a basis for habeas relief.

The court, however, will briefly examine whether Gallo's actual-innocence argument provides a vehicle for the consideration of any procedurally deficient claims.  Under Schlup v. Delo, 115 S. Ct. 851, 867 (1995), an inmate's innocence may allow federal review of procedurally barred claims when "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."  Schlup was specific about what evidence an inmate must use to show his innocence: only "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy

---

[23]Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 43.

-10-

eyewitness accounts, or critical physical evidence." Id. at 865; see also Fairman v. Anderson, 188 F.3d 635, 644 (5th Cir. 1999) ("Examples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence.").

Gallo does not rely on evidence that is of the kind or nature that will allow him to litigate a federal habeas petition. Gallo does not bring forward any new scientific evidence, previously unavailable testimony, or physical evidence. Gallo instead revives "[h]is trial attorneys' theory of the case [which] was that the murder had actually been committed by [the victim's] mother."[24] Gallo does so by relying on two factors: (1) his consistent protestations of innocence throughout his legal proceedings and (2) alleged contradictions and weaknesses in the trial testimony, most particularly in that involving the victim's mother.[25] In other words, Gallo's actual-innocence argument is grounded in the trial evidence and testimony, not on new, reliable evidence that he did not kill the victim.

As described by Respondent, "Gallo's proclamations of innocence are based entirely on weak circumstantial evidence that

---

[24]See Petitioner's Reply to Respondent's Answer with Brief in Support, Docket Entry No. 108, p. 15.

[25]See Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, pp. 40-42; see also Petitioner's Reply to Respondent's Answer with Brief in Support, Docket Entry No. 108, p. 18.

was elicited at his trial" which are "no more compelling today than . . . when his jury rejected his defensive theory twenty-one years ago."[26]  Gallo does not present any new evidence that would support a valid actual-innocence claim.  Gallo's arguments for innocence cannot forgive any procedural bar.

## B.    Claim Three:   Ineffective Assistance of Trial Counsel

In claim three, Gallo alleges that various errors by his trial attorneys violated his Sixth Amendment right to effective legal representation under Strickland v. Washington, 104 S. Ct. 2052 (1984).[27]  Gallo concedes that he never exhausted claim three.[28]  A federal procedural bar forecloses review of Gallo's Strickland claim.

Gallo relies on Martinez v. Ryan, 132 S. Ct. 1309 (2012) to overcome the procedural bar.[29]  "In Martinez v. Ryan, the Supreme Court held that a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at

---

[26]See Respondent Guerrero's Answer with Brief in Support, Docket Entry No. 105, p. 53.

[27]See Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, pp. 66-91.  To prevail on an ineffective-assistance claim, an inmate must demonstrate that (1) his counsel's performance was deficient and (2) the deficient performance resulted in prejudice.  Strickland, 104 S. Ct. at 2064.

[28]See Petitioner's Reply to Respondent's Answer with Brief in Support, Docket Entry No. 108, p. 49.

[29]See Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 91.

trial if, in the initial-review collateral proceeding, . . . counsel . . . was ineffective." Ramey v. Davis, 942 F.3d 241, 254 (5th Cir. 2019) (quotation omitted).  Courts have distilled three factors for a valid Martinez argument:  (1) "his claim . . . is substantial – i.e., has some merit"; (2) habeas counsel was ineffective under Strickland for not raising the underlying claim; and (3) actual prejudice resulted.  Cantu v. Davis, 665 F. App'x 384, 386 (5th Cir. 2016) (quotation omitted).

Gallo's Martinez arguments fail for three reasons.  First, Gallo has not adequately briefed his arguments.  Gallo devotes only one paragraph in his petition and a short discussion in his reply to his post-conviction attorneys' efforts.[30]  Martinez, however, requires a more-detailed review of habeas counsel's representation, which involves considering the possible reasons for which an effective attorney may omit certain claims.  See Jones v. Barnes, 103 S. Ct. 3308, 3313 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments . . . and focusing on one central issue if possible, or at most on a few key issues.").  Gallo's shallow briefing is insufficient to show that his initial habeas attorneys were ineffective.

Second, Gallo neglected opportunities to exhaust the same claims he faults initial habeas counsel for not exhausting.  When

---

[30]See Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 91; Petitioner's Reply to Respondent's Answer with Brief in Support, Docket Entry No. 108, pp. 49–51.

Gallo filed his federal petition over a decade ago, he acknowledged that he had not exhausted his <u>Strickland</u> arguments.[31]   Before returning to state court, Gallo blamed his initial habeas attorneys for not exhausting his <u>Strickland</u> arguments.[32]   Yet Gallo then withheld those claims when he returned to state court.   Gallo cannot show that his initial habeas attorney acted deficiently by not raising claims that he himself chose not to champion later.

Finally, Gallo's failure to show actual prejudice under <u>Martinez</u> forecloses federal review.   As previously mentioned, a petitioner must show "a reasonable probability that he would have been granted state habeas relief if not for [habeas] counsel's deficiency."   <u>Wessinger v. Vannoy</u>, 864 F.3d 387, 391 (5th Cir. 2017) (quotation omitted).   Gallo extensively discusses his <u>Strickland</u> claims, but does not place them into the context of Texas jurisprudence and demonstrate a reasonable probability that the state courts would have granted relief if he had raised them earlier.   Gallo has not shown actual prejudice as understood by <u>Martinez.</u>

Gallo has not overcome the procedural bar of his <u>Strickland</u> claim.   The court dismisses claim three as unexhausted and procedurally barred.

---

[31]<u>See</u> Protective Skeletal Petition for Writ of Habeas Corpus, Docket Entry No. 24, p. 44.

[32]<u>See</u> Second Amended Petition for Writ of Habeas Corpus, Docket Entry No. 58, pp. 202-04.

### C.    Claim Four:    Ineffective Assistance of Appellate Counsel

In claim four, Gallo complains that his state appellate attorney provided deficient representation. The court dismisses this claim for two reasons. First, Gallo did not exhaust this claim.[33] Gallo makes no effort to demonstrate cause and prejudice which would allow federal review. The court summarily dismisses this claim as procedurally barred.

Second, Gallo has not adequately briefed this claim. Gallo's briefing only spans one-and-a-half pages. Without providing any details, Gallo argues that "[a]ny purely-record-based claims or sub-claims discussed [in his federal petition] could and should have been raised on the direct appeal if the basis for them was entirely present in the record itself."[34] Gallo then summarily declares that, if counsel had raised those unspecified errors, his "conviction would have been reversed on direct appeal."[35] Respondent gave notice in the answer that Gallo had inadequately

---

[33]Gallo counters Respondent's exhaustion argument by stating that it "is false as this was Claim Nine in the Second Amended Petition." Petitioner's Reply to Respondent's Answer with Brief in Support, Docket Entry No. 108, p. 52. Gallo filed his Second Amended Petition in federal, not state, court. See Second Amended Petition for Writ of Habeas Corpus, Docket Entry No. 58, p. 8. It is axiomatic that an inmate cannot exhaust remedies through federal filings. Gallo's Second Amended Petition indicated that he withdrew nearly all allegations of ineffective appellate representation. See id., p. 8.

[34]Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 92.

[35]Id.

briefed this claim, but Gallo still did not cure the defect. Gallo's reply rests on the briefing from his petition.[36]

Gallo must provide details about what counsel failed to raise, why he did so, and what effect it would have had. See Mallard v. Cain, 515 F.3d 379, 383 (5th Cir. 2008) (finding that vague and conclusory Strickland arguments provide no grounds for relief). A court will not scour the record for claims which an attorney could have raised and then assess prejudice without any explicit briefing on the matter. See Murthy v. Missouri, 144 S. Ct. 1972, 1991 n.7 (2024) ("Judges are not like pigs, hunting for truffles buried in the record.") (quotation omitted and cleaned up). Simply, Gallo inadequately briefed this claim.

The court summarily dismisses this claim as unexhausted and inadequately briefed.

## D.   Claim Six:  Suppressed Evidence and False Testimony

In his sixth ground for relief, Gallo alleges that the State violated the Eighth and Fourteenth Amendments by suppressing evidence and presenting false testimony. Gallo bases this claim on testimony from two witnesses: Thomas Gilstrap and Christina Arredondo.[37]   Gallo says that he "is informed, believes, and

---

[36]See Petitioner's Reply to Respondent's Answer with Brief in Support, Docket Entry No. 108, p. 52.

[37]See Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 94.  At trial, Thomas Gilstrap testified about
(continued...)

therefore alleges that the testimony of these witnesses was false and fabricated," yet still provides no proof of suppression or false testimony.[38]

Gallo raised this claim in his third state habeas application. The Court of Criminal Appeals dismissed this claim under its abuse-of-the-writ law without considering its merits. The dismissal results in a procedural bar on federal review.

Gallo makes two arguments to overcome the procedural bar.[39] First, Gallo argues that cause exists to overcome the procedural bar because he could not raise the claim previously. "A showing of cause requires that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule,' such as 'the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable.'" Smith v. Quarterman, 515 F.3d 392, 403 (5th Cir. 2008) (quoting Murray v. Carrier, 106 S. Ct. 2639, 2645 (1986)). Gallo's entire claim, however, rests on unsupported assumptions. Gallo admits that he merely "alleges that

_____

[37](...continued)
statements Gallo made while incarcerated, including that he was the "one that killed that little girl." Reporter's Record, Docket Entry No. 109-59, p. 13. Christina Arredondo, the victim's mother, testified concerning the circumstances of the offense. Ms. Arredondo also attempted to conceal the fact that she had written Gallo love letters while he was incarcerated.

[38]Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 96.

[39]See Petitioner's Reply to Respondent's Answer with Brief in Support, Docket Entry No. 108, pp. 54-55.

the testimony of these witnesses was false and fabricated" and "acknowleges that he cannot provide more in support of the claim" than his speculation.[40]   Gallo bases this claim entirely on speculation and surmise.   Gallo could have raised the same unsupported arguments at any point in his long litigation history.

As his second argument to overcome the procedural bar, Gallo says that his innocence should open the door to full federal review.   As previously discussed, Gallo has not met the specific requirements of a gateway actual-innocence claim.   Gallo, therefore, cannot overcome the procedural bar of claim six.

### E.   Conclusion of Procedurally Deficient Claims

Gallo has not overcome the procedural bar of claims one, three, four, and six.  The court, therefore, dismisses those claims without reaching their merits.

Given the seriousness of this case, however, the court has alternatively considered Gallo's barred claims in the context of

---

[40]Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 96.  Gallo says that, "[i]n another capital case, . . . information has come to light that [the] trial prosecutor [from his case] threatened and intimidated witnesses in order to secure the death penalty."  Id., pp. 94-95.  From that, Gallo extrapolates that the prosecutor's "misconduct . . . at least casts doubt on his use of jailhouse informant Mr. Gilstrap in [his] case."  Id., p. 95.  Still, Gallo has not provided any evidence that the State suppressed anything relating to Gilstrap. Similarly, Gallo does not present any direct evidence that the State suppressed evidence about, or presented false testimony through, Ms. Arredondo.   Instead, Gallo refers to "serious unanswered questions" about her testimony and highlights conflicts between her account and other trial testimony.  Id.

the pleadings, the record, and the law.   Having carefully considered the merits of the claims, the Court does not find them worthy of habeas relief.   The court alternatively denies claims one, three, four, and six on the merits.   See 28 U.S.C. § 2254(b)(2).

### III.   Procedurally Proper Claim

Only the merits of claim two and five are before the court in a procedurally actionable manner.   The state courts' rejection of both claims qualifies as an "adjudication on the merits" which is subject to deference under Anti-Terrorism and Effective Death Penalty Act ("AEDPA").   See 28 U.S.C. § 2254(d); Anaya v. Lumpkin, 976 F.3d 545, 550 (5th Cir. 2020).   Under AEDPA, "habeas relief 'shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless' the state court adjudication '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;'" or it "'(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"   Moore v. Vannoy, 968 F.3d 482, 485 (5th Cir. 2020)(quoting 28 U.S.C. § 2254(d)).[41]

---

[41]"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it
(continued...)

**A.    Claim Two:    Trial Court Error**

Claim two alleges that the trial court violated Gallo's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments by: (1) failing to grant a continuance when the State announced a "surprise" witness and (2) disallowing the presentation of expert testimony.[42]    The Court of Criminal Appeals considered, and rejected, both arguments on direct appeal.    Gallo must show that the Court of Criminal Appeals' decision was contrary to, or an unreasonable application of, federal law.    See 28 U.S.C. § 2254(d)(1).

1.    Claim Two(a)

Gallo argues that the trial court violated his constitutional rights by refusing to grant a continuance after the State announced a new witness.    The trial of Gallo's guilt began on February 3,

---

(...continued)
reaches a different conclusion than the Supreme Court on materially indistinguishable facts."    Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (citations and internal quotation marks omitted).    To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice."    Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"    Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

[42]See Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, pp. 44-64.

2004.  On Thursday, February 5, 2004, the State told the defense that a jail inmate, Thomas Gilstrap, had just come forward with information.[43]  On that same day, the State provided the defense with information it had received from Gilstrap and records detailing his criminal history.[44]

On Monday, February 9, 2004, trial counsel filed a written motion asking for a continuance based on the emergence of Gilstrap's testimony.[45]  The defense requested time to investigate Gilstrap's background, including his prior convictions.[46]  During trial proceedings that same day, the defense approached the bench to discuss the continuance motion.  In the subsequent discussion, the State argued that there it was "not bad faith by the prosecution" because "the State [was] surprised" when Gilstrap came forward with information.[47]

The trial court then held a hearing outside the jury's presence in which Gilstrap's testified.  Gilstrap described the circumstances surrounding Gallo's incriminating statements.[48]  The trial court overruled the defense motion to suppress Gilstrap's

---

[43]Reporter's Record, Docket Entry No. 109-57, pp. 71-73.

[44]See id., p. 72.

[45]See Clerk's Record, Docket Entry No. 109-165, pp. 48-50.

[46]Reporter's Record, Docket Entry No. 109-57, p. 72.

[47]Id., p. 73.

[48]See Reporter's Record, Docket Entry No. 109-58, pp. 7-13.

-21-

testimony and for a continuance.[49]

In his trial testimony, Gilstrap described his prior convictions, including the fact that he had been jailed in 2002 for "hitting [his] wife."[50] Gilstrap then testified about a conversation he had with Gallo while housed together in January 2003.[51] Gallo said: "I guess you know who I am, huh? . . . I'm the one that killed that little girl."[52] Gallo described how the victim had been "bothering" him by "making a lot of noise and everything," so he "spanked her," "took her in the bathroom," and "slammed her into the bathtub . . . ."[53] After divulging other specifics about the murder, Gallo stopped talking. The defense's cross-examination extensively explored Gilstrap's crimes, discussed his history of substance abuse, and suggested that he hoped for some benefit from his testimony.[54]

On direct appeal, Gallo argued that without a continuance he could not fully investigate Gilstrap's background and prepare an effective cross-examination.[55] The Court of Criminal Appeals found no constitutional error. The Court of Criminal Appeals held that

---

[49]Id., pp. 14-15.

[50]Reporter's Record, Docket Entry No. 109-59, pp. 7-8.

[51]Id., pp. 11-13.

[52]Id., p. 13.

[53]Id., pp. 14-16.

[54]See id., pp. 18-32.

[55]Corrected Applicant's Brief, Docket Entry No. 109-139, pp. 70-72.

-22-

Gallo "failed to show that he was actually prejudiced by the trial court's ruling" on the continuance motion because

> [d]efense counsel cross-examined Gilstrap about the details of his assault on his wife, his '26 years of heroin abuse,' the medications he was taking in the jail 'psych ward,' his cocaine abuse, his thirty-year criminal history, and the fact that he waited so long to come forward with information pertaining to [Gallo].[56]

"Given trial counsel's extensive cross-examination," the Court of Criminal Appeals concluded that Gallo "failed to show what surprise remained or in what manner counsel could have been more effective if he had been given more time to prepare for this witness."[57]

Gallo's federal claim argues that the Sixth Amendment's guarantee of effective legal representation should have resulted in a continuance.[58] Gallo argues that the Court of Criminal Appeals' "analysis is erroneous" because trial counsel did not have sufficient time to investigate Gilstrap's background.[59] Despite the short notice, trial counsel cross-examined Gilstrap extensively. In the many years since his trial, Gallo has not brought forward any information about Gilstrap beyond that discussed at trial which would have undermined his credibility. Gallo has never identified any unexplored area of cross-examination which counsel could not

---

[56]_Gallo v. State,_ 239 S.W.3d 757, 765 (Tex. Crim. App. 2007).

[57]_Id._

[58]_See_ Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 47.

[59]_See id.,_ p. 48.

reach because of time constraints.  In short, Gallo has not shown how a continuance would have changed trial counsel's cross-examination.  Gallo, therefore, has not shown that the state court's decision was contrary to, or an unreasonable application of, federal law.  See 28 U.S.C. § 2254(d)(1).

2.    Claim Two(B)

Gallo contends that the trial court violated his constitutional right to present a complete defense by not letting an expert witness testify about the phenomenon of filicide.  The defense faced a difficult challenge at trial.  The evidence strongly pointed to Gallo as the one who committed a vicious, inexplicable crime against an innocent, vulnerable victim. Testimony indicated that Gallo was the only adult home when the victim stopped breathing.  Emergency responders observed numerous brutal injuries including bruises and bite marks.  A later examination revealed more than 200 injuries to the child's body.

Gallo initially blamed the injuries on other children. Without admitting to the sexual assault or murder, Gallo eventually confessed to hurting the child.  The State, however, presented testimony that Gallo said he had killed the victim.  While in jail, Gallo confessed to another inmate: "I'm the one that killed the little girl."[60]

Trial counsel prepared a defense which attempted to shift

---

[60]Reporter's Record, Docket Entry No. 109-59, p. 13.

blame from Gallo to the victim's mother.   The defense called witnesses who questioned the State's time line of events to suggest that the victim's mother may have had the opportunity to commit the murder.   The defense also wanted to show that the victim's mother was the type of person who could kill her own child.   Trial counsel specifically wanted to call Dr. George Holden, a professor of psychology at the University of Texas at Austin, as an expert on filicide.

The trial court held a hearing outside the jury's presence to determine the admissibility of Dr. Holden's testimony.[61]   The parties framed the admissibility of Dr. Holden's testimony under Rule 702 of the Texas Rules of Evidence.   Under Rule 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto . . . ." Rule 702 requires "the proponent of scientific evidence [to] show by clear and convincing proof that the proffered evidence is sufficiently reliable and relevant to assist the jury in accurately understanding other evidence or in determining a fact in issue." Wells v. State, 611 S.W.3d 396, 426 (Tex. Crim. App. 2020).   In fields of study like psychology, the Texas trial court must assess "(1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within

_____

[61]Reporter's Record, Docket Entry No. 109-60, pp. 235-57.

-25-

the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field." Nenno v. State, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), overruled on other grounds by State v. Terrazas, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999).

The parties questioned Dr. Holden outside the jury's presence. The parties' questioning focused on whether Dr. Holden's research on filicide met the requirements for admissibility under Texas law. Dr. Holden explained that his testimony would "set up a profile for somebody that kills their own child."[62] Dr. Holden admitted that he did not interview the victim's mother, but instead based his testimony primarily on (1) his "extensive research in the area of parent/child relationships and family violence and child mistreatment"; and (2) "the profile of [the victim's mother]" based on a "psychological report" and "CPS records."[63] From that review, Dr. Holden concluded that the victim's mother "would fit the profile" of someone who could murder their child.[64] On cross-examination, however, Dr. Holden explained that "[t]he science of predicting one who is capable of killing is inexact" and "there hasn't been extensive enough research into the

---

[62]Id., p. 243.

[63]Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, p. 49.

[64]Reporter's Record, Docket Entry No. 109-60, p. 253.

-26-

characteristics of filicide in order to come up with a set profile."[65]

After questioning by the parties, the trial court disallowed Dr. Holden's testimony. The trial court gave "a couple of reasons" for not permitting the testimony. The trial court questioned whether filicide was "a legitimate field of expertise and whether it would be helpful to the jury or not," particularly because Dr. Holden did not have "extensive enough research for him to give any kind of risk factors as to the study of filicide."[66] The trial court concluded that Dr. Holden's "testimony with regard to the studies of filicide or child abuse [was not] reliable."[67]

Gallo argues that the exclusion of Dr. Holden's testimony violated his Sixth and Fourteenth Amendment right "'to present a complete defense.'" Crane v. Kentucky, 106 S. Ct. 2142, 2146 (1986) (quoting California v. Trombetta, 104 S. Ct. 2528, 2532 (1984)); see also Chambers v. Mississippi, 93 S. Ct. 1038, 1049 (1973). Gallo raised this claim on direct appeal. Gallo argues that (1) the state court did not rule on the federal aspects of his claim, excluding it from AEDPA deference and (2) even if AEDPA applied, the state court's rejection of this claim was contrary to, or an unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1).

---

[65]Id.

[66]Id., pp. 253, 255.

[67]Id., p. 256.

a.    AEDPA

Gallo first argues that AEDPA does not apply because the state court did not adjudicate his federal constitutional arguments. Gallo contends that the state-court decision "is silent on [his] federal constitutional claim."[68] A state court's silence alone does not mean it failed to adjudicate an inmate's claim. "[I]t is not the practice of busy state courts to discuss separately every single claim to which a defendant makes a passing reference." See Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013). Federal courts employ a rebuttable presumption that the state courts adjudicated all claims on the merits. See id. at 1096; see also Grant v. Vannoy, 829 F. App'x 23, 30 (5th Cir. 2020); Woodfox v. Cain, 772 F.3d 358, 371 (5th Cir. 2014). An inmate carries his "heavy burden of rebuttal" by "offer[ing] evidence of state-law procedural principles . . . contrary to the presumption," or evidence that "*very clearly*" establishes that "a federal claim was inadvertently overlooked in state court." Jimenez v. Guerrero, 133 F.4th 483, 489 (5th Cir. 2025) (quotation omitted). The Fifth Circuit has said that showing a claim "was properly presented to the state courts" but "somehow not adjudicated" is "probably impossible in practice . . . ." Id. at 490.

---

[68]Petitioner's Reply to Respondent's Answer with Brief in Support, Docket Entry No. 108, p. 29.

-28-

Gallo has not shown that the state courts ignored this claim. Gallo's state appellate briefing primarily relied on state law and only made a "passing reference" to a federal constitutional argument. Williams, 133 S. Ct. at 1094. Gallo's appellate briefing referred to the federal constitution in the heading to the relevant section, but only devoted a few sentences to any discussion of federal law.[69] Gallo did not explicitly place his state appellate briefing in a federal constitutional context or significantly develop any federal arguments. Instead, Gallo's arguments heavily emphasized state evidentiary law. Gallo, in fact, expressly framed his "arguments and authorities" in the context of Rule 702 of the Texas Rules of Evidence.

The Court of Criminal Appeals' written opinion followed Gallo's lead, mentioning that he had "alleg[ed] that the trial court's ruling denied him a meaningful opportunity to present a complete defense," but then analyzing the state law arguments Gallo had raised. Gallo, 239 S.W.3d at 766. After addressing the issues as Gallo had raised them, the Court of Criminal Appeals ended its discussion by stating that "the trial court's ruling did not

---

[69]Gallo's state and federal briefing rely on the "Eighth and Fourteenth Amendments . . . ." Corrected Applicant's Brief, Docket Entry No. 109-139, p. 73; Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, pp. 52-53. The federal constitutional right to present a complete defense is "rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment," not the Eighth Amendment. Crane v. Kentucky, 106 S. Ct. 2142, 2146 (1986).

prevent [Gallo] from arguing that the victim's mother could have committed the crime." Id. at 767. The Court of Criminal Appeals then overruled his appellate claim. See id.

Nothing in the state court's decision suggests that it failed to adjudicate Gallo's fleeting federal arguments. The Court of Criminal Appeals did not extensively discuss the federal constitutional component of Gallo's claim, yet its discussion mirrored the emphasis Gallo had put on the issue. Quite simply, the Court of Criminal Appeals "resolv[ed] an issue in the exact same terms" as Gallo presented it. Lucio v. Lumpkin, 987 F.3d 451, 482 (5th Cir. 2021). Gallo has not overcome the presumption that the state courts adjudicated his federal claim.

b. Federal Review

Gallo must show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law. See 28 U.S.C. § 2254(d)(1). Federal courts uphold "state courts' wide latitude to make discretionary evidentiary decisions." Lucio, 987 F.3d at 471; see also Caldwell v. Davis, 757 F. App'x 336, 339 (5th Cir. 2018). The Constitution specifically "permits judges to exclude evidence that is . . . only marginally relevant or poses an undue risk of . . . confusion of the issues." Holmes v. South Carolina, 126 S. Ct. 1727, 1732 (2006) (internal quotation and citations omitted). "Due process is implicated only for

rulings of such a magnitude or so egregious that they render the trial fundamentally unfair." Gonzales v. Thaler, 643 F.3d 425, 430 (5th Cir. 2011) (footnotes and internal quotation marks omitted).

The exclusion of the expert testimony did not impair Gallo's ability to present a meaningful defense. The Supreme Court has only found a complete-defense violation in cases involving "an idiosyncratic state rule of evidence that was 'arbitrary,' 'did not rationally serve any discernible purpose,' and 'could not be rationally defended.'" Lucio, 987 F.3d at 473–74 (quoting Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013)). The "Supreme Court has never applied its complete-defense cases to discretionary evidentiary decisions under rules that are themselves constitutional," such as Rule 702. Lucio, 987 F.3d at 474. Gallo has not alleged any constitutional defect in Texas' evidentiary rule, only in its application in his case.

As previously discussed, the trial court did not completely prevent Gallo from presenting a defense based on filicide; the primary defensive theme throughout trial was to cast blame on the victim's mother. The Court of Criminal Appeals found on direct review that "[t]he trial court's ruling did not prevent [Gallo] from arguing that the victim's mother could have committed the crime." Gallo, 239 S.W.3d at 766-67. The trial court only excluded one expert's testimony on characteristics common to those who kill their children.

-31-

The trial court explored the basis for Dr. Holden's testimony in a hearing.  The trial court allowed the parties to examine Dr. Holden and assessed the support for his proposed testimony. The trial court found that his proposed testimony was not adequately supported, reliable, or helpful.  The state court's decision was not arbitrary or without legal justification. Accordingly, the state court's finding of no constitutional error was not contrary to, or an unreasonable application of, federal law.  See 28 U.S.C. § 2254(d)(1).

**B.   Claim Five:  Cumulative Error**

In claim five, Gallo claims that the cumulative effect of any error causes an independent constitutional violation under the Fourteenth Amendment.[70]  Gallo raised a cumulative-error claim in his first state habeas application.[71]  The state habeas court found that Gallo "fail[ed] to demonstrate error in the trial or direct appeal" and thus his claim "based on the cumulative effect of alleged error [was] without merit."[72]

---

[70]See Third Amended Petition for Writ of Habeas Corpus, Docket Entry No. 97, pp. 93-94.

[71]See Application for Post-Conviction Writ of Habeas Corpus, Docket Entry No. 109-170, p. 252

[72]Findings of Fact and Conclusions of Law, Docket Entry No. 109-172, p. 327.  Respondent argues that Gallo did not exhaust this claim because his state habeas application alleged different errors than those he attempts to cumulate on federal review.  Even if Gallo's state litigation did not fully exhaust his federal claim, the court may deny any meritless unexhausted claim.  See 28

Gallo has not shown any constitutional error.  An independent cumulative-error claim based is viable only when: "(1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"  Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992) (quoting Cupp v. Naughten, 94 S. Ct. 396, 400 (1973)).  "Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised."  Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996); see also Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Twenty times zero equals zero.").  There is simply no error to cumulate.  The court denies Gallo's cumulative-error claim.

## V.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or

---

U.S.C. § 2254(b)(2).

wrong.'" <u>Tennard v. Dretke,</u> 124 S. Ct. 2562, 2565 (2004) (quoting <u>Slack v. McDaniel,</u> 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Buck v. Davis,</u> 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

After a careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because Gallo does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.[73]

---

[73]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with this federal habeas action. The court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. Despite Gallo's failure to cure procedural defects in many of his claims, the court has spent substantial time considering their merits in the alternative. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.

## V. Conclusion and Order

The court **ORDERS** as follows:

1. The Third Amended Petition for Writ of Habeas Corpus filed by Tomas Raul Gallo (Docket Entry No. 97) is **DENIED,** and this action will be dismissed with prejudice.
2. A certificate of appealability is **DENIED.**

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 2nd day of March, 2026.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE